IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LARRY NEAL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 07-1497 |
| ) | |
| v. ) | Magistrate Judge Bissoon[1] |
| ) | |
| DAILY'S JUICE, Division of ) | |
| American Beverage Corporation, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM ORDER

## I. MEMORANDUM

Defendant's Motion for Summary Judgment (Doc. 24) will be granted in part and denied in part as described below, and Plaintiff's Motion for Summary Judgment (Doc. 22) will be denied.

## BACKGROUND

Plaintiff Larry E. Neal has filed this lawsuit, *pro se*, against his former employer, Daily's Juice ("Defendant"). *See generally* Compl. (Doc. 1). Plaintiff claims discrimination under Title VII based on race. *See id.* The only substantive allegations in his Complaint are as follows:

> Defendant has repeatedly discriminated . . . and retaliated against
> Afr[ican] American employees[.]

---

[1] By consent of the parties, the undersigned sits as the District Judge in this case. *See* Consent forms (Docs. 4 & 7) ("voluntarily consent[ing] to have a United States Magistrate Judge conduct . . . all further proceedings . . ., including trial and entry of a final judgment"); *see also* text Order dated Aug. 19, 2008 (reassigning case from Magistrate Judge Hay to Magistrate Judge Bissoon).

> After a[n EEOC] charge of discrimination was filed [by Plaintiff] on March 21, 2005 . . ., [D]efendant moved [P]laintiff to a dangerous work location intentionally for the purpose of intimidation. [The l]ocation of [Plaintiff's] office was repeatedly hit by forklift traffic until [the] office collapsed with [P]laintiff inside[,] nearly causing his demise. [Defendant p]assed over [P]laintiff for promotion[s] and on a regular basis has allowed Afr[ican] Americans to be harassed racially without taking action.

Compl. at ¶¶ 4-5.[2]

Defendant has moved for summary judgment, and Plaintiff has presented little evidence in opposition. Essentially, the Court is limited to Plaintiff's two-page "[Response] to Summary Judgment," the papers attached thereto, and the EEOC charges filed by Plaintiff and attached to Defendant's moving papers. *See* Pl.'s Resp. in Opp'n (Doc. 27, hereinafter referenced as "SJ Response," and cited as "SJ Resp.") at 1-2; Pl.'s Mar. 21, 2005 EEOC Charge (filed as Ex. 3 to Doc. 25, hereinafter "the 2005 EEOC Charge") (alleging race discrimination); Pl.'s Aug. 14, 2006 EEOC Charge (filed as Ex. 4 to Doc. 25, hereinafter "the 2006 EEOC Charge") (alleging race discrimination and retaliation).

Plaintiff's "Response" mixes argumentation with factual averments of the kind typically found in a sworn declaration. *See* Pl.'s Resp. Plaintiff, however, has not even signed the document, let alone sworn on personal knowledge to the veracity of its contents. *See id.* Although unrepresented litigants are afforded some leniency, Plaintiff's submission is not even close to the kind of *pro se* filing that courts have considered as evidence on summary judgment. *Cf., e.g.*, Howard v. Hunter, 2008 WL 4601028, *2 (C.D. Cal. Oct. 10, 2008) ("[i]n resolving a summary judgment motion filed against a *pro se* plaintiff," court may consider "contentions

---

[2] Given that Plaintiff has not verified his Complaint, the Court cannot consider it as an affidavit for the purposes of summary judgment. *See* discussion *infra*. The Court recites the contents of Plaintiff's pleadings only for the purposes of establishing the background in this case.

2

offered in motion[ papers] and pleadings" that "are based on personal knowledge" and "attested under penalty of perjury . . . [to be] true and correct") (citation to quoted source omitted); Egli v. Stevens, 1993 WL 153141, *8 n.6 (E.D. Pa. May 11, 1993) (for *pro se* plaintiff, where "neither [the] complaint nor his response to defendants' motion for summary judgment contain[ed] a verification," court could "treat neither as if it were an affidavit"), *aff'd*, 17 F.3d 1429 (3d Cir. Jan. 3, 1994) (table). Accordingly, the District Court will not consider the contents of Plaintiff's Response.[3]

The exhibits attached to Plaintiff's Response likewise are of little utility. They consist of: correspondence and form letters regarding Plaintiff's EEOC proceedings, *see* Doc. 27-2 at pgs. 1 & 10 of 33; orders entered against Plaintiff in the Family Division of the Court of Common Pleas of Allegheny County, *id.* at 2-3; spread sheets regarding Defendant apparently prepared on behalf of the EEOC, *id.* at 4-7; indiscernible photocopies of pictures taken by Plaintiff at his former work stations, *id.* at 12-28; messages sent to Plaintiff's work email account by co-workers, *id.* at 29-30; a form letter sent to Plaintiff by his long term disability ("LTD") provider, *id.* at 31; a two page recitation of employment discrimination law, *id.* at 32-33; and an EEOC "Determination" letter finding that Defendant violated Title VII and a seemingly related "Witness Interview" summary. *Id.* at 8-9, 11.

The Family Division orders are irrelevant for the purposes of summary judgment. So too are the EEOC form letters, correspondence, and spread sheets. Plaintiff's photographs are

---

[3] Although the deficiencies in Plaintiff's filing conceivably could be cured through supplemental submission(s), the undersigned's review of Plaintiff's current Response has identified no statements therein that would modify the Court's rulings on summary judgment. Any curative efforts therefore would be futile, and they are denied as such. Finally, because Defendant's motion papers address certain theories identified only in Plaintiff's unverified submissions, the Court will reference said filings for the purposes of analyzing Defendant's arguments for summary judgment.

3

unauthenticated, and immaterial at this stage in the proceedings. Plaintiff's facially neutral work emails have no meaningful effect on the validity of his claims. The same is true regarding the LTD form letter. Finally, the EEOC Determination letter is of questionable admissibility and, even assuming the Court properly may consider it, the EEOC's findings are not binding on this tribunal. *See* Coleman v. Home Depot, Inc., 306 F.3d 1333, 1335 (3d Cir. 2002) ("an EEOC Letter of Determination is not *per se* admissible"); Laber v. Harvey, 438 F.3d 404, 420 (4th Cir. 2006) (district court's review of discrimination claims is *de novo*, and "private-sector employees . . . [are] unable to use the EEOC's [determination] to compel a [judicial] finding of discrimination") (citation omitted).

Last are Plaintiff's EEOC Charges, which Defendant itself has placed into the record. Plaintiff signed the Charges, "declar[ing] under penalty of perjury" as to their "tru[th] and correct[ness]." *See* 2005 EEOC Charge; 2006 EEOC Charge. Such documents routinely are considered within the context of summary judgment, and so will they be here. *Cf. generally* Dawson v. Harran, 2008 WL 1959696, *4 n.6 (E.D. Pa. May 5, 2008) ("an EEOC Charge of Discrimination is a public record that may be considered" at 12(b)(6) stage and thereafter) (citations omitted).

The primary focus of Plaintiff's discrimination claims is Defendant placing him in undesirable and/or unsafe work locations. *See generally* Compl. at ¶ 5. Defendant operated two facilities, one in Verona, Pennsylvania and the other in Blawnox, Pennsylvania. *See generally* Aff. of K. Janowitz (Ex. 5 to Doc. 25) at ¶ 5. Plaintiff initially was stationed in Verona, and later was moved to Blawnox. *See id.* at ¶¶ 5-7. Plaintiff's 2005 EEOC Charge addressed the Verona facility:

> [In] February 2004, my office [in Verona] was moved into the back of a tractor-trailer. This trailer had no light except for sunlight. The trailer leaked water and had no heat. After six months, my office was moved into the equivalent of a broom closet, with little light or air. I am currently still assigned [to] this work area. . . .
>
> I believe I was discriminated against because of my race, . . . in that white employees have not been subjected to the same deplorable working conditions as I have . . . .

*Id.* at ¶¶ 1, 3.

Plaintiff's 2006 EEOC Charge added a claim of retaliation, stating:

> About [four] weeks after I filed my original [C]harge . . .[,] I was transferred to [the Blawnox] warehouse. In this position[,] I have been provided a shack instead of an office[,] which . . . sits in the traffic of forklifts. The shack has been hit several times and there has been damage and part of it collapsed. I think they are trying to force me to quit. . . .

*Id.* at ¶ 1.

Plaintiff also makes reference to being denied promotions; being the subject of disparate pay; witnessing racial harassment on the job; and being the victim of constructive discharge. *See generally* Compl. at ¶ 5; 2006 EEOC Charge at ¶¶ 1-3; *cf. also generally* Plaintiff's SJ Resp. at 1-2.

As for Plaintiff's failure-to-promote and disparate pay claims, Defendant has put forth unrefuted evidence establishing that it had legitimate, non-discriminatory reasons for these adverse employment actions. Defendant also has shown its entitlement to summary judgment on Plaintiff's racial harassment and constructive discharge claims, as well as his allegations of discrimination and retaliation in connection with the Blawnox transfer. Summary judgment is

not appropriate, however, on Plaintiff's claims of discrimination stemming from his relocations to undesirable workspaces in Verona.

**ANALYSIS**

    **A.    Plaintiff's Failure-to-Promote Claims.**

Defendant has submitted affidavits establishing that Plaintiff was either not qualified, or was less qualified than the successful applicants, regarding the four promotions he desired.[4] *See, e.g.*, Aff. of S. Nonnenberg (Ex. 7 to Doc. 25) at ¶¶ 12-14 (Plaintiff was not qualified for position awarded to David Artinger); *id.* at ¶¶ 17-18 (Plaintiff was less qualified for job filled by Joe Orr); Aff. of R. Fichtner (Ex. 8 to Doc. 25) at ¶¶ 12, 14, 16 (James Riordan was awarded position based on his qualifications); *and* Aff. of M. Blechman (Ex. 6 to Doc. 25) at ¶¶ 28-29 (Plaintiff was not most qualified applicant for customer service position). Plaintiff has adduced no evidence to rebut Defendant's sworn statements, but rather states his subjective belief that he was denied promotions because of race. *See generally* Pl.'s SJ Resp. at 1-2. This is insufficient under the law. *See* Hose v. Buca Rest., Inc., 2008 WL 4000403, *6 (W.D. Pa. Aug. 25, 2008) (McVerry, J.; Lenihan, M.J.) (plaintiff "must present evidence contradicting the core facts put forward by the employer as the legitimate business reason for its decision[s]," and "[e]vidence contradicting these core facts must be directed at the decision-maker's belief"; plaintiff's "own beliefs and personal judgments, without more, will not raise a genuine issue of material fact") (citations and internal quotations omitted, emphasis added).

---

[4] Plaintiff's submissions do not specify the four positions he wished to occupy, but Defendant has identified them through his deposition testimony. *See* Def.'s Br. (Doc. 26) at 13. Otherwise, the Complaint appears facially deficient under the Federal Rules of Civil Procedure. In any event, Defendant has not moved for dismissal under Federal Rule 12(b)(6).

Defendant is entitled to summary judgment on Plaintiff's failure-to-promote claims.[5]

### B. Plaintiff's Disparate Pay Claim.

Regarding disparate pay, the only comparator identified by Plaintiff is Jim Henry. *See generally* Pl.'s SJ Resp. at 1. Defendant has proffered sworn statements demonstrating legitimate reasons for the modest discrepancy between Plaintiff's and Mr. Henry's pay. *See* Blechman Aff. at ¶ 49 (Plaintiff's job was different than Mr. Neal's and involved less responsibility). Again, Plaintiff offers no competent evidence to refute Defendant's non-discriminatory explanations, and Defendant is entitled to summary judgment. *See generally* Hose, cited *supra*.

### C. Racial Harassment.

Plaintiff identifies no specific instances of racial harassment against him, claiming only that Defendant allowed harassment "on a regular basis." *See* Compl. at ¶ 5. At his deposition, Plaintiff identified one worker, janitor Bill Schwartz, who allegedly accused an unidentified black co-worker of dirtying a bathroom. *See* Pl.'s Dep. Tr. at 88-89 (filed under Doc. 25-2 at pgs. 24-25 of 28).

Obviously, this evidence does not establish that Plaintiff was the victim of racial harassment. *Cf. generally* Drake v. Steamfitters Local Union No. 420, 2005 WL 196444, *9 (E.D. Pa. Jan. 27, 2005) (under Title VII, plaintiff "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others") (citation omitted). Additionally, Defendant has shown that, when its management learned of the incident referenced by Plaintiff,

---

[5] Defendant also argues that Plaintiff has failed to exhaust administrative remedies. *See* Def.'s Br. at 7-8. Aside from his Blawnox-related claims, addressed below, the Court need not reach the exhaustion issue because Defendant is entitled to summary judgment on the merits.

Mr. Schwartz was suspended and warned that further misconduct would result in his termination. *See* Def.'s Facts at ¶¶ 47-49 (citing record evidence). The record is devoid of evidence regarding subsequent incidents.

Plaintiff's averments do not support an actionable claim of harassment and, even if they did, Defendant has shown its entitlement to summary judgment. *See* <u>Weston v. Pennsylvania</u>, 251 F.3d 420, 427 (3d Cir. 2001) ("when the source of the alleged harassment is a co-worker, a plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate remedial action") (citations omitted).

### D. **Constructive Discharge.**

Although Plaintiff survives summary judgment regarding his placement in undesirable workspaces in Verona, he has failed to support a reasonable inference of constructive discharge. Defendant's undisputed evidence shows that Plaintiff ceased working in April 2007, as the result of a non-work related injury. *See* Def.'s Facts at ¶¶ 51-55. On or around October 2007, Plaintiff returned to work and reported to warehouse supervisor Don Shaw. *See id.* at ¶¶ 56, 59-60. Mr. Shaw has sworn, and Plaintiff has failed to refute, that Plaintiff's work performance began to deteriorate and he was counseled regarding the same. *See* Aff. of D. Shaw (filed as Ex. 9 to Doc. 25) at ¶¶ 19-22. Shortly thereafter, Plaintiff resigned. *See id.* at ¶¶ 23, 28.

Plaintiff offers no evidence that he was forced to a resign as a result his placement in any work location. Indeed, his resignation well succeeded his transfer to Blawnox, and it came shortly after the intervening event of his taking leave to recover from a non-work related injury. *See* discussions *supra*.

Given Defendant's entitlement to summary judgment regarding all of Plaintiff's legal theories save his workspace relocations in Verona, Plaintiff cannot show that Defendant "knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *See* Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1084 (3d Cir. 1996) (citation to quoted source omitted).

Otherwise, Plaintiff's suggests that his resignation was "[in]voluntary" because Defendant told him he could not collect 401K benefits if he did not write a letter of resignation. *See* Pl.'s SJ Resp. at 2. Plaintiff's deposition testimony does not bear this assertion out, as he testified that he first stated verbally to Defendant "it was in [his] best interest . . . not to return to work." *See* Pl.'s Dep. Tr. at 18. Although he later memorialized his resignation in writing to release his 401K funds, his own testimony reveals that this was incidental to his previous decision to resign. *See id.* at 19.

Plaintiff has not adduced sufficient facts to support his constructive discharge claim, and Defendant is entitled to summary judgment.

### E. Plaintiff Has Failed to Show that He Timely Exhausted Administrative Remedies Regarding His Transfer to the Blawnox Facility.

Title VII plaintiffs "must submit their administrative discrimination charge within 300 days of the challenged employment action." Watson v. Eastman Kodak Co., 235 F.3d 851, 854 (3d Cir. 2000) (citations omitted). "[T]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most [salient]." *Id.* at 855 (citations and internal quotations omitted).

Plaintiff's 2006 EEOC Charge indicates, and Defendant's evidence confirms, that Plaintiff was relocated to Blawnox in April 2005. *See* 2006 EEOC Charge at ¶ 1 (Plaintiff was

transferred approximately "[four] weeks" after filing of initial Charge on March 21, 2005); *see also id.* at "Date(s) Discrimination Took Place" section (identifying "[e]arliest" date as April 15, 2005); Def.'s Facts at ¶ 9 (citing record evidence indicating same). Plaintiff's 300-day limitations period expired in February 2006, more than five months before he filed his second EEOC Charge on August 14, 2006.

Plaintiff's claims regarding his Blawnox relocation are time-barred, and Defendant is entitled to summary judgment.[6]

### F. Discrimination Based on Plaintiff's Verona Work Stations.

Plaintiff complains that he was placed in "deplorable working conditions" in Verona. *See* discussion *supra*. Although Defendant argues that it had legitimate, non-retaliatory reasons for Plaintiff's relocation to the Blawnox facility, its brief is completely silent regarding Plaintiff's alleged placement in a leaky tractor-trailer in Verona with no heat or electric, and later "a broom closet . . . with little light or air." *See id.*

The Court of Appeals for the Third Circuit has indicated that an employee's placement in undesirable work locations may constitute an adverse employment action. *See* Mondzelewski v. Pathmark Stores, Inc., 162 F.3d 778, 788 (3d Cir. 1998) (under Title VII, adverse employment action "does not require loss of money or benefits but rather may consist of changes in [office] location, duties, perks, or other basic aspects of the job") (citation omitted); *see also* Langley v. Merck & Co., Inc., 2006 WL 1647015, *2 n.3 (3d Cir. Jun. 15, 2006) ("whether an action

---

[6] The "discriminatory act" identified in Plaintiff's 2006 EEOC Charge was his April 2005 transfer to Blawnox. *See generally* discussion *supra*; *see also* 2006 EEOC Charge ("[e]arliest" date of discrimination was "4-15-2005"). Plaintiff's allegation that his Blawnox workspace was subsequently hit by forklifts does not modify the conclusion that his 2006 Charge was untimely. *See* Watson, 235 F.3d at 855 ("[T]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most [salient].") (emphasis added).

constitutes an adverse employment action depends on the attendant circumstances," and courts have "indicated that moving a person's office to an undesirable location could, under certain circumstances, constitute an adverse employment action") (citations omitted). Here, Plaintiff alleges work conditions that arguably strain the bounds of human decency, and he specifically asserts that white co-workers were not similarly mistreated. *See generally* 2005 EEOC Charge at ¶ 3.

As referenced above, Defendant offers no explanations for Plaintiff's work relocations in Verona. Rather, buried in Defendant's affidavits is the suggestion that, once Plaintiff was transferred to Blawnox, his complaints regarding Verona were irrelevant. *See, e.g.*, Janowitz Aff. at ¶ 7 ("I have a vague recollection that the EEOC [C]harge filed in March, 2005 was primarily a complaint about his work station in Verona which, of course, was no longer an issue [once] he move[d] to Blawnox"); Blechman Aff. at ¶ 16 ("[a]ll of the allegations contained in the [C]harge [Plaintiff] filed on March 21, 2005 were eliminated with his move to the Blawnox . . . facility").

Given the Third Circuit's recognition that an employee's placement in unfavorable work locations may constitute an adverse employment action, it is not Defendant's or its witnesses' prerogative to deem Plaintiff's complaints of discrimination irrelevant or moot. In any event, Defendant's "explanations" are susceptible to rejection under the "pretext" analysis. *See* <u>Marra v. Philadelphia Housing Auth.</u>, 497 F.3d 286, 306 (3d Cir. 2007) (plaintiff may rebut defendant's non-discriminatory reasons by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered" explanations such that "a reasonable factfinder could rationally find them unworthy of credence") (citation and internal

quotations omitted). Defendant is not entitled to summary judgment regarding Plaintiff's claims of discrimination based on his workspace relocations in Verona.[7]

For all of the reasons stated above, the Court hereby enters the following:

## II. ORDER

Defendant's Motion for Summary Judgment (**Doc. 24**) is **DENIED** regarding Plaintiff's claims of discrimination based on his placement into undesirable work locations in Verona, Pennsylvania; Defendant's Motion is **GRANTED** in all other respects; and Plaintiff's Motion for Summary Judgment (**Doc. 22**) is **DENIED**.

IT IS SO ORDERED.


February 10, 2009                                    s/Cathy Bissoon
                                                     Cathy Bissoon
                                                     United States Magistrate Judge

cc (via email):

Thomas H. May, Esq.
Jeffrey J. Wetzel, Esq.


cc (via 1st Class U.S. Mail):

Larry E. Neal
700 Chislett Street
Pittsburgh, PA  15206

---

[7] Plaintiff's four-sentence Motion for Summary Judgment (Doc. 22) will be denied. As seen above, Defendant is entitled to summary judgment on all of Plaintiff's claims save his relocations in Verona. As for Plaintiff's surviving claim, it is the jury's function to either accept or reject Defendant's non-discriminatory explanations. *See* Eshelman v. Agere Sys., Inc., -- F.3d --, 2009 WL 223858, *6-7 (3d Cir. Jan. 30, 2009) (citation omitted).